**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

Phillip Adams,

Plaintiff,

-against-

Equifax Information Services, LLC; and Experian Information Solutions, Inc.;

Defendants.

Case No.

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, by and through counsel, as and for this Complaint against Defendants Equifax Information Services, LLC ("Equifax") and Experian Information Solutions, Inc. ("Experian") (Equifax and Experian each a "Bureau" and collectively the "Bureaus"), respectfully sets forth, complains and alleges, upon information and belief, the following:

1. Plaintiff brings this action for damages arising from Defendants' violations of 15 U.S.C. § 1681 et seq., the Fair Credit Reporting Act ("FCRA").

## JURISDICTION AND VENUE

2. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts and transactions giving rise to Plaintiff's claims occurred here and Plaintiff resides in here.

## PARTIES

4. Plaintiff is a resident of the State of Florida, County of Hernando.

5. At all times material hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

6. Defendant Experian Information Solutions, Inc. is a consumer reporting agency that regularly conducts business in this District and throughout the United States.

7. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

8. Defendant Equifax Information Services, LLC is a consumer reporting agency that regularly conducts business in this District and throughout the United States.

9. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

10. At all times material hereto, Defendants regularly prepared and furnished consumer reports and consumer-report information concerning consumers, including Plaintiff, to third parties for monetary compensation.

**FACTUAL ALLEGATIONS**

11. Plaintiff incorporates the above allegations as if fully set forth herein.

12. Plaintiff had an automobile loan account with non-party Santander Bank, N.A. ("Santander") (the "Santander Account").

13. Santander reported Plaintiff as deceased.

14. Plaintiff does not dispute that the Santander Account belongs to him.

15. What Plaintiff disputes is the reporting that Plaintiff was deceased in connection with the Santander Account.

16. Plaintiff is not deceased.

17. Accordingly, any reporting identifying Plaintiff as deceased was false and materially inaccurate.

***Plaintiff's Disputes***

18. In or about 2025, Plaintiff called Experian and disputed that he was being reported as deceased.

19. Plaintiff advised Experian that he was alive and that any deceased designation was inaccurate.

20. In or about 2025, Plaintiff also called Equifax and disputed that he was being reported as deceased.

21. Plaintiff advised Equifax that he was alive and that any deceased designation was inaccurate.

22. Plaintiff thereafter made additional follow-up telephone disputes to Experian and Equifax and again advised each Bureau that he was alive and that the deceased reporting was inaccurate.

23. Plaintiff's disputes gave each Bureau direct notice that reporting Plaintiff as deceased was inaccurate.

24. A reasonable reinvestigation would have revealed that Plaintiff was alive and that the deceased designation was false.

### *Equifax's Reinvestigation*

25. On or about July 31, 2026, Equifax completed a reinvestigation of a dispute submitted by Plaintiff.

26. When Equifax received the dispute, the Santander Account identified Plaintiff as the owner of an "Individual Account."

27. Equifax advised Plaintiff that he had indicated the account information was inaccurate and that Equifax's investigation concluded that the disputed information should be updated.

28. Rather than correct the deceased reporting, Equifax's July 31, 2026 dispute results changed the ownership field on the Santander Account from "Individual Account" to "Deceased."

29. Equifax's July 31, 2026 dispute results also added narrative code 256, which Equifax identified as "Consumer Deceased."

30. The deceased designation added or confirmed by Equifax through its reinvestigation was false.

31. Thus, after Plaintiff disputed inaccurate information and after Equifax purported to investigate that dispute, Equifax reported Plaintiff as deceased.

32. At or around the same time, Equifax credit information furnished for display through Credit Karma reflected the Santander Account with

a. a current payment status of "Consumer Deceased,"

b. a worst payment status of "Consumer Deceased," and

c. a remark stating "Consumer deceased."

33. That Equifax credit information also displayed a VantageScore of 1 on July 31, 2026.

34. A VantageScore of 1 often indicates that the consumer is deceased and therefore has no credit score.

### *Experian's Continued and Recurring Reporting*

35. On July 31, 2026, Plaintiff's Experian consumer report reflected a normal FICO Score.

36. On that same July 31, 2026 report, Experian reported the Santander Account as Plaintiff's individual account and did not identify Plaintiff as deceased in connection with that account.

37. On August 1, 2026, however, Experian reported the Santander Account with the field "Responsibility: Deceased."

38. Experian's August 1, 2026 report also stated that Plaintiff had no available FICO Score 8 and that no credit rating was available.

39. On August 2, 2026, Experian again stated that Plaintiff had no available FICO Score 8 and that no credit rating was available.

40. On August 4, 2026, Experian continued to state that Plaintiff had no available FICO Score 8 and that no credit rating was available.

41. On August 7, 2026, Experian again displayed the Santander Account with the field "Responsibility: Deceased."

42. On August 7, 2026, Experian also displayed Plaintiff's Experian credit report as "Unscorable."

43. Experian's August 7, 2026 dispute-center information stated that, for security reasons, Experian could not process a dispute concerning the Santander Account online and instructed Plaintiff to contact an Experian Dispute Specialist by telephone.

44. Experian's repeated and recurring deceased reporting occurred after Plaintiff had already contacted Experian and disputed that he was deceased.

45. Despite Plaintiff's direct disputes, Experian failed to reasonably and permanently correct the false deceased designation.

***Defendant's Publications and Adverse Credit Effects***

46. During the same period, Plaintiff sought automobile financing and other credit.

47. Plaintiff applied for credit through Holler Driver's Mart to Roadrunner Financial, Inc. ("Roadrunner").

48. By letter dated August 12, 2026, Roadrunner advised Plaintiff that it could not grant his application for credit.

49. Roadrunner identified Experian as the consumer reporting agency from which it obtained information in connection with Plaintiff's application.

50. Road Runner identified the score that it received from Experian as a FICO 10 Auto score of 9001.

51. It also notes "scores range from a low of 250 to a high of 900."

52. A score of 9001 therefore reflects a non-score or error score, specifically that plaintiff was deceased.

53. Plaintiff also sought automobile financing in connection with a proposed purchase or lease through Roger Holler Chevrolet Co.

54. Ally Bank ("Ally") attempted to obtain Plaintiff's Experian credit score on August 4, 2026 for use in making its credit decision.

55. Ally was unable to obtain an Experian credit score for Plaintiff on August 4, 2026.

56. By letter dated August 27, 2026, Ally advised Plaintiff that it was not agreeable to handling the proposed transaction as submitted and would proceed only under modified terms relayed to the dealer.

57. Ally stated that its decision was based in whole or in part on information obtained from consumer reporting agencies that included Experian.

58. Plaintiff applied for an auto loan on July 31, 2026 from Mid Florida Credit Union ("MFCU").

59. MFCU declined to provide credit to Plaintiff due to him being reported as deceased.

60. MFCU received Plaintiff's credit report from Equifax.

61. These adverse credit events occurred while Experian and Equifax were unable to provide Plaintiff a credit score and while they were reporting or recurringly reporting Plaintiff as deceased in connection with the Santander Account.

### ***Damages***

62. As a result of Defendants' conduct, Plaintiff has suffered actual damages.

63. Plaintiff expended time and effort attempting to correct the false deceased reporting, including by repeatedly contacting Defendants and reviewing his credit information.

64. Plaintiff's credit files became unscorable during the period described above even though Experian had reflected a normal scores immediately beforehand.

65. Plaintiff experienced adverse credit consequences, including Roadrunner's denial of requested credit, and Ally's refusal to approve the proposed transaction as submitted, and MFCU credit denial, possibly among others.

66. The false reporting also damaged Plaintiff's creditworthiness and reputation by presenting him as deceased to third parties reviewing or receiving his credit information.

67. Plaintiff suffered stress, anxiety, frustration, embarrassment, and difficulty sleeping as a result of being falsely reported as deceased and Defendants' failure to reasonably correct the problem.

68. After Plaintiff directly notified Defendants that he was alive, Defendants knew or had reason to know that deceased reporting concerning Plaintiff was inaccurate.

69. At minimum, Defendants acted negligently by failing to use reasonable procedures and conduct reasonable reinvestigations sufficient to prevent or correct the false deceased reporting.

70. Defendants' continued or renewed reporting after receiving Plaintiff's disputes also constituted a reckless disregard of Plaintiff's rights under the FCRA.

**COUNT I**
**(Violation of 15 U.S.C. § 1681e(b) - Experian)**

71. Plaintiff incorporates the allegations preceding Count I as if fully set forth herein.

72. Experian prepared consumer reports concerning Plaintiff and furnished consumer-report information concerning Plaintiff to third parties, including Roadrunner and Ally.

73. Experian's reporting was inaccurate and materially misleading because it identified Plaintiff as deceased in connection with the Santander Account.

74. During the same period, Experian was unable to provide a credit score for Plaintiff.

75. Experian failed to follow reasonable procedures to assure the maximum possible accuracy of the information it prepared and furnished concerning Plaintiff, in violation of 15 U.S.C. § 1681e(b).

76. As a direct and proximate result of Experian's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered the damages described above.

77. Experian's conduct was willful and reckless, or in the alternative negligent, entitling Plaintiff to relief under 15 U.S.C. §§ 1681n and 1681o.

**COUNT II**
**(Violation of 15 U.S.C. § 1681i - Experian)**

78. Plaintiff incorporates the allegations preceding Count I as if fully set forth herein.

79. Plaintiff directly disputed with Experian that he was being inaccurately reported as deceased.

80. Experian was therefore required to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to record the current status of the disputed information or delete it as required by the FCRA.

81. Experian failed to conduct a reasonable reinvestigation because the false deceased designation continued and recurred after Plaintiff's disputes.

82. A reasonable reinvestigation would have established that Plaintiff was alive and would have prevented the continued or recurring deceased reporting.

83. Experian thereby violated 15 U.S.C. § 1681i.

84. As a direct and proximate result of Experian's violation of 15 U.S.C. § 1681i, Plaintiff suffered the damages described above.

85. Experian's conduct was willful and reckless, or in the alternative negligent, entitling Plaintiff to relief under 15 U.S.C. §§ 1681n and 1681o.

**COUNT III**
**(Violation of 15 U.S.C. § 1681e(b) - Equifax)**

86. Plaintiff incorporates the allegations preceding Count I as if fully set forth herein.

87. Equifax prepared and furnished a consumer report concerning Plaintiff that inaccurately identified Plaintiff as deceased in connection with the Santander Account, including MFCU.

88. Equifax's deceased reporting was inaccurate and materially misleading because it identified Plaintiff as deceased in connection with the Santander Account.

89. During the same period, Equifax was unable to provide a credit score for Plaintiff.

90. Equifax failed to follow reasonable procedures to assure the maximum possible accuracy of the information it prepared and furnished concerning Plaintiff, in violation of 15 U.S.C. § 1681e(b).

91. As a direct and proximate result of Equifax's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered the damages described above.

92. Equifax's conduct was willful and reckless, or in the alternative negligent, entitling Plaintiff to relief under 15 U.S.C. §§ 1681n and 1681o.

**COUNT IV**
**(Violation of 15 U.S.C. § 1681i - Equifax)**

93. Plaintiff incorporates the allegations preceding Count I as if fully set forth herein.

94. Plaintiff directly disputed with Equifax that he was being inaccurately reported as deceased.

95. Equifax was therefore required to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and to record the current status of the disputed information or delete it as required by the FCRA.

96. Equifax's July 31, 2026 reinvestigation was unreasonable because, after Plaintiff disputed inaccurate reporting, Equifax changed the Santander Account from "Individual Account" to "Deceased" and added the narrative code "Consumer Deceased."

97. Equifax therefore failed to conduct a reasonable reinvestigation and failed to accurately record the current status of the disputed information, in violation of 15 U.S.C. § 1681i.

98. As a direct and proximate result of Equifax's violation of 15 U.S.C. § 1681i, Plaintiff suffered the damages described above.

99. Equifax's conduct was willful and reckless, or in the alternative negligent, entitling Plaintiff to relief under 15 U.S.C. §§ 1681n and 1681o.

**DEMAND FOR TRIAL BY JURY**

100. Plaintiff demands and respectfully requests a trial by jury on all claims and issues for which Plaintiff is entitled to a jury trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendants as follows:

a) For actual damages pursuant to 15 U.S.C. §§ 1681n(a)(1)(A) and 1681o(a)(1);

b) For statutory damages pursuant to 15 U.S.C. § 1681n(a)(1)(A);

c) For punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

d) For reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2); and

e) For such other and further relief as this Court deems just and proper.

Dated: October 9, 2026

*/s/ Aleksandra Kravets*
Aleksandra Kravets, Esq.
Aleksandra Kravets, Esq. P.A.
865 SW 113 Lane
Pembroke Pines, FL 33025
Phone: 347-268-9533
Fax: 929-333-7774
Email: ak@akesqpa.com

*Eliyahu Babad, Esq.*
Stein Saks, PLLC
One University Plaza, Suite 620
Hackensack, NJ 07601
(201) 282-6500 x121
EBabad@SteinSaksLegal.com
Pending Admission Pro Hac Vice

*Attorneys for Plaintiff*